UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH A. TURNER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 04-71221

HON. BERNARD A. FRIEDMAN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Elizabeth A. Turner brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits (DIB) under Title II and Title XVIII of the Social Security Act (Tr. 44). Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Plaintiff's Motion for Summary Judgment be GRANTED and that Defendant's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On December 15, 2001, Plaintiff filed an application for Disability Insurance

Benefits (DIB) alleging an onset of disability date of December 1, 2000 (Tr. 44-46). After denial of her claim initially, Plaintiff filed a timely request for an administrative hearing, conducted on October 29, 2003 in Lansing, Michigan before Administrative Law Judge (ALJ) Earl A. Witten. Plaintiff, represented by attorney Kenneth F. Laritz, testified. (Tr. 275-291). Rich Riedl, acting as Vocational Expert (VE) also testified (Tr. 288-290, 292-299). ALJ Witten found that although Plaintiff was unable to perform any of her past work, she retained the capacity to perform "a significant number of jobs in the national economy" (Tr. 23). On March 17, 2003 the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on April 1, 2004.

## BACKGROUND FACTS

Plaintiff, born September 23, 1957, was age forty-six when the ALJ issued his decision(Tr.16). She completed the Tenth Grade (Tr. 16). Plaintiff worked previously as a machine operator, performing unskilled work in the light exertional catagory (Tr. 16). Plaintiff alleges breathing problems, neck pain, and emotional problems prevent her from working (Tr. 16-18).

### A.   Plaintiff's Testimony

On October 29, 2003 Plaintiff, forty-six, testified before ALJ Witten that she lived in Jackson, Michigan (Tr. 275). She testified that she worked most recently in a factory, sanding and polishing nuts and bolts, until her inability to lift more than ten

pounds along with breathing problems and neck and shoulder pain obliged her to discontinue work (Tr. 276-277). Plaintiff reported that she completed Tenth Grade (Tr. 275).

Plaintiff testified that she used inhalers for breathing problems (Tr. 277). She reported that she took three to four doses of Albuterol on an average day and used a nebulizer three to four times every day(Tr. 278). She indicated that shortness of breath prevented her from performing housework without difficulty (Tr. 279). She reported constant coughing spells (Tr. 279).

Plaintiff stated further that she suffered from high blood pressure, which caused headaches and dizzy spells for varying lengths of time (Tr. 279-281). She reported that she had broken a neck bone several years before which resulted in constant pain and stiffness (Tr. 281).

Plaintiff stated that she had been treated for depression by a psychiatrist for two years, but discontinued treatment for financial reasons (Tr. 282-283). She testified that she continued to be affected by depression, reporting mood swings, crying spells, and feelings of frustration and worthlessness (Tr. 283).

Plaintiff reported that shortness of breath obliged her to lie down each day for anywhere between one and two hours (Tr. 284). She asserted that she could not walk across the room without becoming winded (Tr. 285). She claimed additionally that she could not stand in one position for any length of time without shortness of breath,

and that standing made her ankles swell (Tr. 285). She approximated that she could not sit in one position for more than five to ten minutes (Tr. 285-286).

Plaintiff indicated that when she visited her primary care physician, her appointment time was used in discussing treatment for her breathing problems, thus she used only ice packs to relieve her neck pain (Tr. 286). Plaintiff testified that she failed to include mental problems (depression) on her application for disability benefits because until she was hospitalized for an overdose, she had not realized that she was depressed (Tr. 286).

**B.      Medical Evidence**

In February, 2001 Plaintiff sought treatment for a sore throat after she inhaled fumes created by mixing household cleaners (Tr. 141). Patricia Marsh, M.D. prescribed a "steroid burst and taper with prednisone (Tr. 141) Dr. Marsh referred Plaintiff to Otolaryngology to confirm that Plaintiff had not suffered damage not visible upon her initial exam. Dr. Marsh noted that Plaintiff's lungs were clear and a cardiac exam revealed normal results (Tr. 141).

Notes from a July, 2001 exam indicate that Plaintiff complained of asthma along with GERD, and symptoms compatible with irritable bowel syndrome (Tr. 180). Naveed Siddiqi, M.D., prescribed an Albuterol inhaler for Plaintiff's asthma (Tr. 180). Notes from subsequent examinations by Dr. Siddiqi indicate that in February and March, 2002, Plaintiff continued to complain of shortness of breath, but denied

chest pain or wheezing (Tr. 176). Dr. Siddiqi prescribed Claritin and gave Plaintiff samples of Zyrtec (Tr. 176). In April, Plaintiff requested a nebulizer (Tr. 173).

In March, 2002, Bharti Sachdev, M.D. examined Plaintiff on behalf of Disability Determination Services (Tr. 145). Plaintiff complained of seasonal allergies and progressively worsening shortness of breath (Tr. 145). She related to Dr. Sachdev that she had not sought emergency room treatment since 1998 and continued to smoke between one and a half and two packs of cigarettes each day (Tr. 146). She reported neck pain that registered at 10 on a scale of 1-10 (Tr. 145). A neck examination revealed no localized deformity (Tr. 146). She denied depression (Tr. 145).

Later the same month, Plaintiff sought emergency room evaluation at her daughter's behest after Plaintiff ingested both Vicodin and alcohol in an apparent suicide gesture (Tr. 155-156). Notes from an intake interview performed by Counseling Services two and a half weeks later indicate that Plaintiff complained of depression because of marital problems and her inability to work (Tr. 166). Intake therapist, Doug McComas M.S., evaluated Plaintiff's Global Assessment Function (GAF) at 48 (Tr. 170).

Also in April, 2002, William Jackson, M.D. performed a Physical Residual Functional Capacity Assessment of Plaintiff based on her medical records (Tr. 157). He found that Plaintiff could lift twenty pounds occasionally and ten pounds

frequently and possessed an unlimited ability to push or pull (Tr. 158). Dr. Jackson concluded that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation (Tr. 161). Dr. Jackson observed that Plaintiff suffered from chronic asthma, but opined that Plaintiff's medical records did not support her alleged symptoms (Tr. 162).

In May 2002, Dr. Thomas Horner, Ph.D., performed a mental evaluation of Plaintiff on behalf of Disability Determination Services (Tr. 181). Plaintiff expressed frustration at her inability to work and draw income (Tr. 182). Dr. Horner observed that Plaintiff was well-groomed and very polite, but noted that she shifted during her interview "as a consequence of evident discomfort" (Tr. 184). He scored Plaintiff's GAF at 55-60 (Tr. 190). In May, 2002, John S. Pai completed a Psychiatric Review Technique (PRTF) based on Plaintiff's mental health records (Tr. 193). He found that Plaintiff had mild restrictions of activities of daily living and difficulties in maintaining social functioning and moderate difficulties in maintaining concentration, persistence, and pace (Tr. 203). Dr. Pai's Mental Residual Functional Capacity Assessment indicates a moderately limited ability to carry out detailed instructions; to maintain attention and concentration for extended periods; and to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances (Tr. 207). Likewise, Dr. Pai found that Plaintiff's abilities to maintain sustained concentration and persistence were moderately limited along with

the ability to respond appropriately to changes in work settings (Tr. 208). He concluded that Plaintiff suffered from "no significant psychopathology" and retained the capability to perform unskilled work (Tr. 209).

In November, 2002, Larry Farr, D.O., upon examining Plaintiff, found that she suffered from COPD, asthma, tobacco dependence, and primary alveolar hypoventilation syndrome (not severe) (Tr. 211). In December, 2002 a CT scan of the chest showed clear lungs with a small left upper lobe nodule (Tr. 213). Dr. Farr recommended a followup scan in three months (Tr. 213). He recommended further that Plaintiff continue the use of bronchodilators and that she quit smoking (Tr. 213).

In June, 2003, Plaintiff complained of difficulty swallowing and indigestion to D.C. Baxter, D.O. (Tr. 222). Plaintiff underwent an upper GI study which showed a peptic ulcer (Tr. 217-218). Notes from a followup examination indicate that Plaintiff reported good results after taking Prilosec (Tr. 217). Notes from an exam conducted in September 2003 indicate that Plaintiff continued to experience asthma (Tr. 227). Impressions of Plaintiff's lungs indicated wheezes, rhonchi, and rales (Tr. 228).

### C.    Vocational Expert Testimony

VE Rich Riedl, stating that his testimony conformed with the Dictionary of Occupational Titles (DOT), classified Plaintiff's former work as that of machine operator (Tr. 292-296). VE Riedl's analysis placed Plaintiff's previous work as

unskilled at the light level of exertion (Tr. 292). ALJ Witten posed the following question to the VE:

> Q. "Assume that I find that [Plaintiff's] residual functional capacity assessment showed the maximum sustained exertional work capacity to perform work which allowed her to lift 10 pounds occasionally and five pounds on a routine basis; able to stand and/or walk two hours out of an eight hour day; able to sit at least six hours out of an eight hour day. In order to perform that work there should be no repetitive bending, twisting or turning, no crawling, squatting, kneeling or climbing; no working at unprotected heights; no working around unprotected moving machinery. The job should be done in a controlled environment, relatively free from dust, smoke and fumes. No requirement for overhead work. The job should be considered simple, routine, one, two step process jobs. Given those restrictions, what jobs would be available for an individual [Plaintiff's] age, education, past work background?"(Tr. 294-295).

The VE testified that given the above limitations Plaintiff could not perform any of her past work, but taking into account Plaintiff's additional need for a sit/stand option, along with the restriction of no repetitive rotation, flexion or hyperextension, Plaintiff could perform sedentary, unskilled work subject to the above limitations (Tr. 295). He stated that Plaintiff could perform the work of surveillance system monitor, (3,600 jobs) order clerk, (3,000 jobs) telemarketer, (3,400 jobs) referral or information clerk, (1800 jobs) and appointment clerk, (6,500 jobs) (Tr. 295). VE stated that the jobs cited represented regional incidence figures for the southern two-thirds of the lower peninsula of the state of Michigan (Tr. 293).

### D. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Witten found that Plaintiff suffered

-8-

from the impairments of tobacco abuse; asthma; chronic obstructive pulmonary disease; gastroesophageal reflux disease; irritable bowel syndrome; history of high blood pressure; minimal old T8 vertebral body compression; adjustment disorder with depressed and anxious mood, which were severe, either alone or in combination (Tr.19). Nonetheless, he determined that although Plaintiff had a severe impairment or combination of impairments none met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr.19).

He found that while Plaintiff was unable to perform any past relevant work , she retained the capacity to perform sedentary work, subject to the following limitations:

> "[preclusion from] lifting or carrying over 10 pounds at one time or more than 5 pounds frequently; walking/standing over 2 hours in an 8-hour workday; repetitive rotation, flexion or hyperextension of the neck; repetitive bending, twisting or turning; crawling, squatting, kneeling, climbing or performing overhead tasks; working around unprotected heights or dangerous moving machinery; working in an area with significant levels of fumes, dust, smoke or gases " (Tr.20).

ALJ Witten found that Plaintiff could perform a "significant number of jobs in the national economy" (Tr. 23). The ALJ, taking into consideration Plaintiff's age, education, past relevant work experience and VE testimony, found that Plaintiff could perform the work of an inspector, surveillance monitor, order clerk, telemarketer, referral clerk, and appointment clerk, 15,900 of which jobs were located in the lower two-thirds of Michigan's lower peninsula (Tr. 21-23).

While acknowledging that Plaintiff's medically determinable impairments "could reasonably be expected to cause the disabling symptomatology alleged," the ALJ found Plaintiff's allegations of physical and emotional limitations "somewhat overstated and inconsistent with the available evidence" (Tr. 19). In support of his determination, the ALJ cited Plaintiff's medical records which he held were inconsistent with Plaintiff's complaints (Tr. 19-20). The ALJ stated further that the Plaintiff's ordinary activities and her favorable appearance and demeanor as recorded by health care personnel at various examinations contributed to his determination (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)(en

banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v.*

*Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Hypothetical Question

Plaintiff maintains that the ALJ's conclusion that Plaintiff had *mild to moderate* deficiencies of concentration, persistence or pace improperly failed to incorporate the *moderate* limitations found in Plaintiff's Mental RFC Form and PRTF, prepared by Dr. Pai in May, 2002 (Tr. 21, 203, 208). *Plaintiff's Brief* at 12. Plaintiff, citing *Howard v. Commissioner* 276 F3d 235 (6th Cir. 2002) also argues that the ALJ's hypothetical question to the VE did not accurately describe the Plaintiff. *Plaintiff's Brief* at 14-17.

Although the ALJ's finding differs from Dr. Pai's conclusion that Plaintiff suffered from *moderate* deficiencies of concentration, persistence or pace, substantial evidence supports the ALJ's conclusion that Plaintiff experienced *mild to moderate* deficiencies of concentration, persistence or pace. As cited by Defendant, on July 15, 2003, more than a year after Dr. Horner performed his mental evaluation, examination notes indicate that Plaintiff told her physician that she controlled her depression with medication (Tr. 229). Notes from a June, 2003 exam state that Plaintiff stated that "Prozac seemed to help quite a bit" (Tr. 231). Plaintiff's application for disability benefits did not include depression among the health concerns which obliged her to discontinue work. Within a few weeks before

Plaintiff's March, 2002 suicide gesture, Plaintiff denied depression (Tr. 145). The evidence of record adequately supports the ALJ's conclusion modifying Dr. Pai's earlier assessment.

While substantial evidence supports the ALJ's conclusion that Plaintiff suffered from *mild to moderate* deficiencies of concentration, persistence or pace, his acknowledgment that Plaintiff's above-stated limitations were at least in part *moderate*, along with his Step Two finding that Plaintiff suffered from the severe impairment of "adjustment disorder with depressed and anxious mood" becomes problematic.[1]

Plaintiff correctly argues that the ALJ's hypothetical question did not reflect Plaintiff's limitations. First, although the ALJ found that Plaintiff suffered from the severe impairment of "adjustment disorder with depressed and anxious mood" his hypothetical question did not reflect his Step Two finding. Although the Sixth Circuit does not require a verbatim recitation of a plaintiff's Step Two impairments in the hypothetical question, the limitations set out in the hypothetical question must

---

[1]The ALJ's use of "mild to moderate" in describing the severity of Plaintiff's concentration, persistence, and pace limitations, does not indicate whether he thought that Plaintiff's limitations were "mild to moderate" in all three categories or "moderate" in one or two categories and mild in another. In any case, the ALJ found some aspect of Plaintiff's limitations "moderate" - a significant restriction on Plaintiff's work abilities which should be reflected in the hypothetical question.

encompass the concrete consequences of the ALJ's Step Two findings.[2] Plaintiff cites the highly analogous *Walker v. Barnhart*, 258 F.Supp.2d 693, 700 (E.D.Mich.2003) in which the court remanded for further proceedings, finding that a "'simple, unskilled work' instruction did not take into account the nonexertional limitations imposed by [the plaintiff's] 'severe' mental impairment."[3] The *Walker* court rejected the magistrate judge's finding that such an "oversight" was insignificant, even though the VE's answer may have encompassed Plaintiff's limitations. *Id.*

Further, given the ALJ's finding that Plaintiff suffered in part from *moderate*

---

[2] Defendant correctly cites *Webb v. Commissioner of Social Sec.* 368 F.3d 629 (6th Cir. 2004), to support the proposition that an ALJ is not required to list all of a claimant's maladies in the hypothetical question. Nonetheless, the *Webb* court acknowledged that "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." (internal citations omitted) *Id.* at 632; quoting *Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir.1987). Defendant also cites *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), which refutes the argument that the ALJ must adhere to talismatic use of the PRTF language in his hypothetical questions to avoid remand. The court found that a question was sufficient provided that it properly reflected plaintiff's relevant limitations: "The ALJ went beyond [a] simple frequency assessment to develop a complete and accurate assessment of Smith's mental impairment."

[3] This Court is mindful that the district court in *Walker*, cited *Howard v. Commissioner*, 276 F3d 235 (6th Cir. 2002). In *Webb, supra* (footnote 2) the Sixth Circuit cautioned against an overly broad interpretation of *Howard*, stating that *Howard* does not mandate that the ALJ must re-list all of a claimant's Step Two impairments in the hypothetical question. The *Walker* court's use of *Howard* comports with the appropriate parameters of that decision, later articulated in *Webb*.

mental limitations, the hypothetical question should have reflected such restrictions (Tr. 21). While a layperson might use "moderate" to denote a lack of severity, "moderate deficiencies of concentration, persistence or pace" is a term of art used in a PRTF which denotes a more significant limitation on Plaintiff's ability to perform gainful activity[4]

In *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996), the hypothetical question posed to the VE described a person "with a minimal ability to read and write, a borderline range of intelligence, a ninth or tenth grade education, an inability to perform highly skilled or technical work, *a capacity for simple jobs*, and a demonstrated ability to control his drinking problem." *Id.*, 92 F.3d at 694 (emphasis added). The court found that the reference to "simple jobs" was not enough to constitute inclusion of the impairments or deficiencies in concentration, persistence and pace which the ALJ noted on the PRTF and remanded the case for further administrative proceedings. In the present case, the ALJ's hypothetical question failed to reflect with specificity his factual determination that Plaintiff had, in part,

---

[4] Within the context of the ALJ's discussion of Plaintiff's mental limitations, he clearly used the terms "mild" and "moderate" as terms of art as found in the PRTF (Tr. 21). The pre-2000 evaluative scale rated these deficiencies based on frequency (never, seldom, often, frequent and constant). While I do not suggest that there is a precise correspondence between the two scales, I note that "moderate" and "often" are each at the mid-point of a five-level range. In *Bankston v. Commissioner*, 127 F. Supp. 2d 820, 826 (E.D. Mich. 2000), the Court found that "a mental deficiency occurring 'often' may not be consistent with substantial gainful employment."

"moderate" limitations in concentration, persistence and pace.

For example, the ALJ in this case identified jobs such as inspector, surveillance monitor, order clerk, telemarketer, referral clerk, and appointment clerk as fitting within Plaintiff's limitations. Even assuming these jobs are simple, and that each discrete task within the work requires only a few steps to complete, it would appear obvious that within the course of a normal, eight-hour workday, the Plaintiff would be required to perform *multiple* simple, one or two-step tasks. The ALJ's hypothetical does not address the Plaintiff's ability to complete his daily work at any of these jobs in a timely manner. Taking into account the ALJ's finding that Plaintiff suffered in part from moderate limitations, the hypothetical question did not accurately portray the Plaintiff's limitations in concentration, persistence and pace, and therefore the VE's testimony as to available jobs, which was accepted by the ALJ, does not constitute substantial evidence that Plaintiff is not disabled. *See Varley v. Secretary of HHS,* 820 F2d 768, 775 (6th Cir. 1987). *See also Sanchez v. Barnhart,* 329 F.Supp.2d 445, 454 (S.D.N.Y.,2004), where the court remanded for "further consideration and clarification," citing the need to " make a precise and informed decision in applying the medical evidence to the universe of jobs available in the economy, as required in the fifth part of the disability test."

This Court recognizes that "where remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a

ping-pong game." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 547 (6th Cir. 2004)(internal citations omitted); *citing NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6, 89 S.Ct. 1426, 22 L.Ed.2d 709 (1969)(plurality opinion). On the other hand, at Step Five of the administrative inquiry, where the burden of proof shifts to the Commissioner to establish that Plaintiff could perform jobs that existed in substantial numbers, such a conclusion cannot be sustained if based on an incomplete set of Plaintiff's limitations.

The final question is whether to remand for further administrative proceedings and findings or to remand for an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994), and *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir. 1994), hold that it is appropriate to remand for an award of benefits when "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id.* This entitlement is established if "the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Faucher,* 17 F.3d at 176 (citing *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985)). This is not *de novo* review, and it is not for this Court to presume how the ALJ would have ruled had the hypothetical question comported with Plaintiff's limitations. Therefore, this case must be remanded for further administrative review.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, that Plaintiff's Motion for Summary Judgment be DENIED, and the case be remanded for further proceedings.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the

court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

R. Steven Whalen
United States Magistrate Judge

Dated: March 07, 2005

## CERTIFICATION OF SERVICE

I, the undersigned, hereby certify that I have on the 7th day of March, 2005, mailed copies of the attached REPORT AND RECOMMENDATION to the following parties:

KENNETH F. LARITZ, ESQ.
15501 METROPOLITAN PARKWAY
SUITE 100
CLINTON TWP., MI 48036

ELIZABETH J. LARIN
ASSISTANT U.S. ATTORNEY
211 WEST FORT STREET
SUITE 2001
DETROIT, MI 48226

SOCIAL SECURITY ADMINISTRATION
OFFICE OF THE REGIONAL COUNSEL
200 WEST ADAMS
30TH FLOOR
CHICAGO, IL 60606

G./K. Wilson, Judicial Assistant
Magistrate Judge R. Steven Whalen